

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:ADW
F. #2021R00552

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 15, 2024

By ECF and Email

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Rashawnee Gray
              Criminal Docket No. 23-118 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter in advance of sentencing in the above-captioned case, which is scheduled for August 22, 2024. For the reasons set forth below, the government respectfully submits that a sentence within the top of the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") range of 46 to 57 months' imprisonment should be imposed in this case.

I.    The Offense of Conviction

      The defendant's conviction arises from his participation in a conspiracy to distribute several kilograms of cocaine in Brooklyn, New York. See Presentence Investigation Report, dated March 12, 2024 ("PSR") ¶¶ 7, 11. As described in detail below, co-defendant Mario Alfredo Lozano ("Lozano") arranged for the smuggling of approximately 11 kilograms of cocaine from Colombia into the United States. Afterward, Lozano arranged for the defendant to retrieve some of the cocaine on two occasions—first in January 2022 and again in November 2022. The defendant failed during his first attempt in January 2022 because he was intercepted on the road by law enforcement. During the November 2022 incident, the defendant met with an undercover officer who would purportedly deliver the cocaine, at which time the defendant was arrested.

      In April 2021, a source of information (the "SOI") informed law enforcement that Lozano was seeking help to transport cocaine from Colombia to the United States. See id. ¶ 7. At the direction of law enforcement, the SOI subsequently recorded multiple communications with Lozano. Id. During those communications, Lozano asked the SOI to help smuggle multiple kilograms of cocaine to the United States. The SOI later arranged for Lozano to meet with an undercover law enforcement agent, who posed as an individual willing to transport cocaine to the United States for Lozano. Id. ¶ 8. On July 9, 2021, Lozano personally delivered 11 wrapped

bricks of cocaine to the undercover agent in Bogota, Colombia. Id. ¶ 9. The cocaine had a net weight of approximately 10.9 kilograms. The next day, law enforcement transported the cocaine to the Eastern District of New York. Id.

Subsequently, the SOI told law enforcement that Lozano had provided the SOI with a phone number for a person located in New York—later identified as the defendant—who could take delivery of the cocaine and provide payment for the transportation coordinated by the SOI. Id. ¶ 9. The SOI indicated to Lozano that the SOI would send an associate—actually an undercover law enforcement agent—to meet with the defendant. Id.

On January 29, 2022, a confidential source (the "CS") spoke with the defendant on a recorded phone call. During that call, the defendant said he would bring $35,000 "for three"—i.e., three kilograms of cocaine. See GRAY000009 (January 24, 2022 Call at 1:58PM). On January 29, 2022, the CS and the defendant spoke again. During that call, the defendant asked, "because of previous experience," if the defendant could "look and check everything before I leave." See GRAY000009 (January 29, 2022 Call at 6:53PM). After the CS confirmed that the defendant could check the cocaine during the meeting, the defendant indicated that this could let them "establish something really strong so that we could build . . . a strong, firm relationship." Id. The CS also said that the CS would be ready for "every time [Lozano] got something" and that the CS would bring it to the defendant. Id. The defendant responded "okay, perfect, perfect . . . I appreciate to hear that. I know it's a little difficult our first round, but you dealing with somebody that's mature." Id.

On January 30, 2022, the CS spoke with the defendant on another recorded phone call. During that call, the defendant confirmed that he would depart for New York the following day to pick up three kilograms of cocaine. See GRAY000009 (January 30, 2022 Call at 1:13PM). Again referring to the quality of the cocaine, the defendant said that he "wanted to check the first round" and "make sure the quality and everything is what [Lozano] says it is." Id.

On January 31, 2022, the defendant departed from Buffalo, New York and started traveling towards New York City, with the goal of retrieving three kilograms of cocaine. PSR ¶ 10. Law enforcement agents conducted a traffic stop and observed the defendant sitting in the front passenger seat, with the defendant's father driving the car. Id. Law enforcement searched the car based on the father's consent and found a black backpack inside of the vehicle, which contained approximately $35,000 in cash. Id. When asked, the defendant's father claimed that the money was from his business and was to be used to shop for "our store." The agents subsequently seized the money. The defendant and his father were briefly detained but later released. Id.

In November 2022, Lozano again attempted to arrange for the defendant to retrieve some of the cocaine. Id. ¶ 11. Between November 13, 2022 and November 28, 2022, an undercover law enforcement agent (the "UC") exchanged multiple recorded phone calls with Lozano and the defendant in which they agreed that the defendant would retrieve some of the cocaine from the UC. Id. Originally, the men agreed that the defendant would retrieve four kilograms of cocaine. For example, on November 15, 2022, Lozano told the UC during a recorded phone call that the defendant would pick up "four girls"—i.e., four kilograms. See

SENSITIVE_GRAY000049 (November 15, 2022 Call at 4:07PM). However, on the morning of the meeting between the defendant and the UC, Lozano told the UC that the defendant would need to make "two trips" because a hidden compartment in the defendant's vehicle could "only fit two" kilograms. See SENSITIVE_GRAY000049 (November 28, 2022 Call at 9:40AM). In other words, the defendant would pay the UC for only two kilograms and arrange for a second meeting to retrieve the other two kilograms. Eventually, Lozano gave the UC the defendant's phone number so the UC and the defendant could communicate directly.

On November 28, 2022, the defendant met with the UC in the Red Hook neighborhood of Brooklyn. Id. ¶ 11. The defendant entered the UC's vehicle and spoke briefly. The defendant then went back to his vehicle, retrieved approximately $15,000 in cash, and then returned to the UC's vehicle. Id. After the defendant showed the agent the money, the defendant asked how he was going to test the quality of the cocaine. When the agent said that the defendant could test in the agent's vehicle, the defendant expressed reluctance, expressing surprise that the agent did not have a second location ready where the defendant could test the cocaine. Shortly thereafter, other agents approached the vehicle and arrested the defendant. Id. On November 29, 2022, the defendant was released on bail.

On March 16, 2023, a grand jury sitting in the Eastern District of New York returned an Indictment charging the Lozano with one count of international cocaine distribution, in violation of 21 U.S.C. §§ 959(a), 959(d), 960(a)(3), and 960(b)(3) (Count One), and both Lozano and the defendant with one count of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) (Count Two). On December 12, 2023, the defendant pleaded guilty to Count Two without a plea agreement. See PSR ¶ 1.

II.     Guidelines Calculation

In the PSR, the U.S. Probation Department calculated the defendant as having a Guidelines total offense level of 25, based on the following:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2D1.1(a)(5) and (c)(5)) | 30 |
| Less: Zero-Point Offender (U.S.S.G. § 4C1.1(a)) | -2 |
| Less: Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total: | 25 |

See PSR ¶ 19-28.

The government disagrees with the above Guidelines calculation and respectfully submits that the calculation should be based on a base offense level of 28, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(6). While Lozano arranged for the distribution of more than 10 kilograms of cocaine, the evidence in this case is only sufficient to prove that the defendant intended to (or that it was reasonably foreseeable to him that he would) receive four kilograms of cocaine. Because the defendant should be held accountable for a quantity of cocaine between 3.5 kilograms and 5 kilograms, the government submits that the base offense level should be 28. A total offense level

of 23, with a Criminal History Category of I, yields a Guidelines range of 46 to 57 months' imprisonment.

III.  Discussion

The government respectfully requests that the Court impose a sentence within the top of the Guidelines sentence. Such a sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a) and would appropriately reflect the seriousness of the defendant's criminal conduct, promote respect for the law, provide just punishment, and deter the defendant and others from committing similar crimes in the future. See 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(B).

A.  The Applicable Law

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct; [and]

(C)  to protect the public from further crimes of the defendant.

Section 3553 also addresses the need for the sentence imposed "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). "[I]n determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, [the Court] shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

It is well-settled that, at sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).

4

Indeed, Title 18, United States Code, Section 3661 expressly provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence, considering all relevant facts.

B. Nature and Circumstances of the Offense

The government respectfully submits that a sentence within the top of the Guidelines range would appropriately "reflect the seriousness of the offense" and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Such a sentence will also provide appropriate punishment for the "nature and circumstances of the offense." See id. § 3553(a)(1).

On two separate occasions, the defendant attempted to purchase several kilograms of cocaine from a larger amount that had been brought into the United States directly from Colombia through the efforts of his co-conspirator, Lozano. While it does not appear that the defendant was directly involved in the importation of the cocaine or that he planned on procuring the entire 11 kilograms, clearly this was not the defendant's first foray into cocaine trafficking. After all, during his calls with the CS in January 2022, the defendant referred to his "previous experience" in checking the quality of cocaine during drug deals. The defendant also said that things would be difficult during "our first round" but indicated that if things went well, they could establish a "strong, firm relationship" so that the defendant could continue obtaining cocaine from the CS and Lozano in the future. And during the November 28, 2022 meeting with the UC, the defendant expressed surprise when the UC suggested that the defendant test the quality of the cocaine in the car instead of in a second location, reflecting his prior experience in cocaine trafficking. Taken together, these circumstances show that the defendant has been involved in significant cocaine deals in the past and had every intention of purchasing additional kilograms of cocaine in the future. In addition, the calls show that the defendant was purchasing the cocaine on his own accord and not at the direction of others. Had the defendant successfully purchased the cocaine, he no doubt would have sold it on the streets of Buffalo or elsewhere, contributing to the addiction, poverty, violence, and other social ills created by drug trafficking. Under those circumstances, a top-of-Guidelines range sentence is warranted.

C. History and Characteristics of the Defendant

The government respectfully submits that the defendant's history and characteristics likewise justify a sentence within the top of the Guidelines range. See 18 U.S.C. § 3553(a)(1). Unlike many individuals who come before the Court for drug-related offenses, the defendant does not come from a broken family and did not suffer any significant childhood trauma. Indeed, the defendant was raised in a stable household under average economic circumstances, with both of his parents and several other family members present in his life. PSR ¶ 38. As an adult, the defendant has worked for years as a barber and appears to be financially stable. Id. ¶¶ 53-54. In other words, financial desperation also cannot explain the defendant's participation in cocaine trafficking. In general, the defendant's history and characteristics present no significant

mitigating circumstances. Taken together, the defendant's history and characteristics support a top-of-Guidelines-range sentence.

### D. Respect for the Law and Need for Deterrence

A significant sentence within the top of the Guidelines range will promote respect for the law and promote both general and specific deterrence. See 18 U.S.C. § 3553(a)(2). The defendant's narcotics offense was serious and deserves serious punishment. In addition, a significant carceral sentence will make clear that the country's drug laws will be enforced vigorously, and that conspiring to distribute drugs will result in significant consequences, especially in cases involving international cocaine trafficking. Moreover, the defendant's conduct was not a one-time offense or an act of desperation due to acute circumstances, but rather a calculated, rational effort motivated by greed. Accordingly, a meaningful sentence is needed to specifically deter the defendant from reoffending.

### E. A Time-Served Sentence Is Unwarranted

The Court should reject the defendant's request for a time-served sentence because it vastly understates the seriousness of the defendant's conduct. In the defendant's telling, he has been an industrious and law-abiding individual for his entire adult life, and the incident on November 28, 2022 was a mere aberration. See ECF No. 33 at 2 (describing the offense conduct as one instance of attempting to purchase two kilograms of cocaine in November 2022) and 6 (describing the defendant's educational and professional history). However, as described earlier, there is ample evidence that the defendant has been engaged in serious cocaine trafficking for some time. After all, the defendant expressly told the CS that he wanted to build an ongoing relationship so that he could obtain cocaine sourced from Lozano in the future. In January 2022, the defendant tried to drive to New York City with $35,000 to purchase three kilograms of cocaine. Despite law enforcement stopping the defendant and seizing the $35,000, the defendant was undeterred. In November 2022, the defendant tried again, this time meeting with the UC in Brooklyn with $15,000 to purchase two kilograms of cocaine. All along the way, the defendant's communications on the phone and with the UC indicated that the defendant had dealt in bulk amounts of cocaine previously and was familiar with the process of testing the quality of cocaine. These were not the words or actions of an amateur or a mere courier. Clearly, the defendant had a previous relationship with Lozano as a cocaine supplier, and the defendant regularly purchased large amounts of cocaine so that he could sell it to others. A time-served sentence would not serve the interests of justice in light of such serious and persistent criminality.

Separately, in arguing for a non-custodial sentence, the defendant points to the words of his family and friends, who praise the defendant as "generous to a fault" and someone who acts as "a mentor to the younger generation." See ECF No. 33 at 6. The defendant's personal generosity towards those close to him is commendable, but that is neither unexpected nor a basis for a substantial downward variance. Indeed, that generosity is sullied by the fact that the defendant has been making money by dealing cocaine. Likewise, any positive standing that the defendant had in the community is undermined by the revelation that he has led a double life as a kilogram-level cocaine trafficker. In sum, the defendant's personal qualities are also not a basis for a substantial downward variance, much less a time-served sentence.

IV.     Conclusion

        For the reasons set forth above, the government requests that the Court impose a sentence within the top of the Guidelines range of 46 to 57 months' imprisonment.

Respectfully submitted,

BREON PEACE<br>
United States Attorney

By:     /s/ Andrew D. Wang<br>
       Andrew D. Wang<br>
       Assistant U.S. Attorney<br>
       (718) 254-6311

cc:  Clerk of Court (BMC) (by ECF)<br>
     Kannan Sundaram, Esq. (by ECF)